**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Delta Air Lines, Inc. | ) | |
| | ) | Case No. 1:12-cv-01758 |
| Plaintiff, | ) | |
| | ) | Honorable Edmond E. Chang |
| v. | ) | |
| | ) | Magistrate Judge Arlander Keys |
| Perfekt Marketing, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF**
**DELTA AIR LINES, INC.'S *EX PARTE* APPLICATION FOR**
**ENTRY OF A (1) TEMPORARY RESTRAINING ORDER, (2) ASSET**
**RESTRAINING ORDER, (3) EXPEDITED DISCOVERY ORDER, AND**
**(4) ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

Plaintiff Delta Air Lines, Inc. ("Delta" or "Plaintiff") submits this Memorandum in

support of its *Ex Parte* Application for Entry of Temporary Restraining Order, Asset Restraining

Order, Expedited Discovery Order, and Order to Show Cause for Preliminary Injunction (the "*Ex*

*Parte* Application").

A separate Motion to file a Brief with an enlargement of page numbers is enclosed.

# TABLE OF CONTENTS

I.   INTRODUCTION...................................................................................... 1

II.  STATEMENT OF FACTS ........................................................................ 3

A.   Plaintiff Delta's Trademarks ................................................................ 3

B.   Defendant's Illegal Activities ............................................................... 5

III.    ARGUMENT ......................................................................................... 9

A.   Standard for Temporary Restraining Order and Preliminary Injunction ................... 12

B.   Delta will Likely Succeed on the Merits............................................. 14
  i. Delta Will Likely Succeed on its Trademark Infringement and Counterfeiting Claim........ 14
  ii. Delta is Likely to Succeed on its False Designation of Origin Claim. ................... 17
  iii. Delta is Likely to Succeed on its Illinois Uniform Deceptive Trade Practice Act Claim. . 18

C.   There is No Adequate Remedy at Law and Delta is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief.................................................. 19

D.   The Balancing of Harms Tips in Delta's Favor.................................... 20

E.   This Injunction is in the Public Interest ............................................... 21

IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ................................. 22

A.   A Temporary Restraining Order Immediately Enjoining Defendant's Unauthorized and Illegal Use of Delta's Marks is Appropriate........................................ 22

B.   An Order Preventing the Fraudulent Transfer of Assets is Appropriate ................ 23

C.   Delta is Entitled to Expedited Discovery .......................................... 25

V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................... 27

VI.    CONCLUSION ...................................................................................... 28

# TABLE OF AUTHORITIES

## Cases

*4 Callman, Unfair Competition, Trademarks and Monopolies* s 88.3(b) at 205 (3d ed. 1970).... 19

*Abbot Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992) .......................................... 11

*Abbot Labs.*, 971 F.2d at 16 ...................................................................................................... 18

*Am. Broad. Co. v. Maljack Prod., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998) ...................... 17

*Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496-97 (7th Cir. 2001).......................... 13

*Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.* 482 F. Supp. 2d 1065, 1078
(E.D.Wisc.2007) .......................................................................................................................... 28

*Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ..................................... 20

*CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 681 (7th Cir. 2001) ........................................ 14

*Chanel, Inc. v. Paley*, No. 09-cv-04979-MHP (N.D. Cal. Nov. 13, 2009)................................... 29

*Chanel, Inc. v. Zhixian*, No. 10-cv-60585-JIC (S.D. Fla. April 21, 2010) .................................. 29

*Charter Nat'l Bank and Trust v. Charter One Fin., Inc.*, 2001 WL 527404, *1 (N.D.Ill. May 15,
2001) .......................................................................................................................................... 10

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp 1075, 1077 (N.D. Ill. 1996) ...................... 9

*Deckers Outdoor Corporation v. Does 1-55*, No. 11 Civ. 10, Doc. No. 26 (N.D. Ill. February 3,
2011) .......................................................................................................................................... 23

*Deckers Outdoor Corporation v. Does 1-55*, No. 11 Civ. 10, Docket Nos. 26, 38 and 69 (N.D.
Ill. 2011)...................................................................................................................................... 6

*Deckers Outdoor Coproration v. Liyanghua et al.,* No. 11 Civ. 7970, Docket Nos. 18, 37 and 42
(N.D. Ill. 2011)............................................................................................................................. 6

*Deckers Outdoor Corporation v. Liyanghua et al.*, No. 11 Civ. 7970 (N.D. Ill. February 3, 2011)
...................................................................................................................................................... 25

*Deckers Outdoor Corporation v. Liyanghua et al.*, No. 11 Civ. 7970, Doc. No. 18 (N.D. Ill. Nov.
15, 2011) ..................................................................................................................................... 23

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996)...................................... 13

*Doty v. Illinois Cent. R.R. Co.*, 162 F.3d 460, 461 (7th Cir. 1998) ............................................. 27

*Dunkin Donuts Franchised Rest. LLC v. Elkhatib*, 2009 WL 2192753, *4 (N.D. Ill. July 17,
2009) .......................................................................................................................................... 18

*Eli Lilly & Co. v. Natural Answers, Inc.* 233 F.3d 456, 461 (7th Cir. 2000)................................ 13

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000)............................... 12

*Eli Lilly*, 233 F.3d at 468 (7th Cir. 2000)................................................................................... 18

*Eli Lilly*, 233 F.3d at 469 ........................................................................................................... 21

*Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.*, 10 Civ. 2672 (S.D. Tex. Aug. 2,
2010) ........................................................................................................................................... 7

*Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.*, No. 4:10 CV 2672 (S.D. Tex. Aug. 2,
2010)....................................................................................................................................... 23, 26

*Farouk Systems, Inc. v. Eyou Int'l Trading Company, Ltd., et al.*, No. 10 Civ. 2672 (S.D. Tex.
Aug. 16, 2010) ........................................................................................................................... 29

*Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463 (E.D. Mich. 2001) ...................................... 24

*Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463, 62 U.S.P.Q. 2d 1789 (E.D. Mich. 2000)...... 7

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Circ. 1989)..... 14

*Gause v. Perkins*, 56 N.C. (3 Jones Eq.) 177 (1857) .................................................................. 19

*Gen. Baking Co. v. Gorman*, 3 F.2d 891, 893 (1st Cir. 1925) ..................................................... 21

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ............................................................ 27

*Goldwyn Pictures Corp. v. Goldwyn*, 296 F. 391, 401 (2d Cir. 1924) ......................................... 21

*Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)........................................... 19

*Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (S.D.N.Y. Oct. 15, 2009)...................... 29

*Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 456 (7th Cir. 2010) ................................ 28

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F. 3d 411 (4th Cir. 1999)............................. 28

*Ideal Indus.*, 612 F.2d at 1026 ................................................................................................... 19

*Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Circ. 1979) ...................... 18

*In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979)..................................................................... 7

*James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976) .................... 21

*Kraft Food Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002)........................... 24

*Krause Int'l , Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994) ................... 20

*Levi Strauss & Co., v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ................ 26

*Libman Co. v. Vining Indus., Inc.* 69 F.3d 1360, 1363 (7th Cir. 1995) ........................................ 15

*Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2005 WL 3115892
   (N.D. Ill. Nov. 8, 2005).......................................................................................................... 25

*Lorillard*, 2005 WL 3115892 at *13.......................................................................................... 26

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomm. Indus. Ass'n*, 929 F. Supp. 473, 478
   (D.D.C. 1996) ......................................................................................................................... 20

*Mascio v. Public Emp. Retirement Sys. of Ohio*, 160 F. 3d 310, 313 (6th Cir. 1998) ................. 28

*Nat'l Football League v. Chen Cheng*, No. 11 Civ. 0344 (S.D.N.Y. Jan. 31, 2011)................... 29

*Neopost Indus. B.V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) ................ 12, 17

*North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 10 CIV
   1630 (S.D.N.Y. Mar. 16, 2010) ........................................................................................ 23, 26

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, (1978)................................................. 27

*Rathman Group v. Tanenbaum*, 889 F. 2d 787, 789 (8th Cir. 1987) ............................................ 28

*Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001)........................................ 18

*Reebok Int'l Ltd. v. Marnatech Enters.*, 970 F.2d 552, 559 (9th Cir. 1992)................................ 25

*Reebok v. Marnatech* .................................................................................................................. 25

*Reebok*, 737 F. Supp. at 1527 ..................................................................................................... 27

*Rosenberg Bros. & Co. v. Elliott*, 7 F.2d 962, 965-66 (3rd Cir. 1925)......................................... 21

*Scotch Whiskey Association v. Varton Distilling Co.*, 489 F.2d 809 (1973) ................................ 11

*Shashi, Inc. v. Ramada Worldwide, Inc.* 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) .......... 28

*Smith Fiberglass Prods., Inc. v. Ameron, Inc.*, 7 F.3d 1327, 1329 (7th Cir. 1993) ..................... 13

*Spex*, 847 F. Supp. at 579............................................................................................................ 17

*Spex, Inc. v. The Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) ............................... 17

*Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950)............................................ 21

*Steele v. Bulova Watch Co.*, 344 U.S. 280, 285 – 286, 73 S.Ct. 252, 97 L.Ed. 252 (1952) ......... 11

*Stork Restaurant, Inc. v. Sahati*, 166 F.2d 348, 354 (9th Cir. 1948) ........................................... 21

*The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co.*, et al., No. 10
   Civ. 1630 (S.D.N.Y. Mar. 16, 2010)........................................................................................ 7

*Time Warner Enter. Co. v. Does #1-2*, 876 F. Supp. 407. 410-11 (E.D.N.Y. 1994)..................... 9

*Tory Burch, LLC., et al. v. Yong Sheng Int'l Trade Co., LTD*, No. 10 Civ. 9336 (S.D.N.Y.
   January 4, 2011)................................................................................................................ 23, 26

*Tory Burch, LLC., et al. v. Yong Sheng Int'l Trade Co., LTD*, No. 10 Civ. 9336 (S.D.N.Y. May
   13, 2011) .................................................................................................................................. 6

*Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029 (N.D. Ill. 2001)...................... 7

*Trans Union LLC*, 142 F.Supp.2d at 1043 citing *Ford Motor Co. v. Summit Motor Prods, Inc.*, 930 F.2d 277, 293 (3rd Cir. 1991), cert. denied, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991) ................................................................................................................................. 15

*True Religion Apparel, Inc., et al. v. Xiaokang Lee et al.*, No. 11 Civ. 8242 (S.D.N.Y. Dec. 12, 2011) ...................................................................................................................................... 28

*TY, Inc.* 237 F.3d at 895 .................................................................................................................. 20

*TY, Inc. v. The Jones Group, Inc.* 237 F.3d 891 at 895 (7th Cir. 2001)....................................... 10

*Vance v. Rumsfeld* 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) ........................................... 27

*Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990) .......... 16

**MEMORANDUM OF LAW**

## I.    INTRODUCTION

Plaintiff Delta brings this action against Defendant Perfekt Marketing, LLC (hereafter "Perfekt Marketing") for federal trademark infringement and counterfeiting, dilution and unfair competition involving claims arising under the Trademark Act of the United States, commonly known as the Lanham Act 15 U.S.C. §§ 1051 *et seq*., and for trade secret misappropriation, state common law trademark infringement, counterfeiting,  injury to business reputation and dilution, deceptive trade practices, and unfair competition under the laws of the State of Illinois, involving claims arising under the Illinois Trade Secret Act 765 ILCS § 1065/ *et seq*., Illinois Anti-Dilution 765 ILCS § 1035/ *et seq*., the Illinois Counterfeit Trademark Act 765 ILCS §1040/ *et seq*., the Uniform Deceptive Trade Practices Act, 815 ILCS § 510.1/ *et seq*., and the Common Law.

Defendant has directed unlawful business activities towards consumers in Illinois and throughout the United States and is causing harm to Plaintiff Delta's business within this Judicial District, and has caused, and will continue to cause, irreparable injury to Delta within this judicial district, especially where Defendant is located. Defendant, based in Arizona, is the architect of a fraudulent scheme in which Defendant mails to third parties believed to be throughout the United States a communication (hereafter the "Communication(s)") purportedly from an "Awards Department" within Plaintiff Delta and which is irreparably harming Delta due to Defendant's unauthorized and infringing use of the DELTA and WIDGET LOGO marks in the Communications. The Communication claims that the recipient has won two round trip airline tickets to anywhere in the continental United States from any major international airport.

Upon information and belief, Defendant is also sending bogus postcards (hereafter the "Postcard(s)") similarly claiming the recipient has won two (2) free airline tickets in the continental United States. By using Delta's name and marks, Defendant is passing itself off as a representative and/or agent and/or partner of Delta, and Defendant makes it appear that Delta endorses the promotional giveaways. Consumers who encounter Defendant's unauthorized uses of Plaintiff's Marks in association with Defendant's fraudulent promotions are likely to believe that Defendant and its services are related to Plaintiff or approved by, associated or affiliated with Plaintiff when, in fact, this is not the case. Defendant should not be permitted to continue their unlawful activities and Delta respectfully requests that this Court issue *ex parte*: (1) a temporary restraining order with notice against Defendant enjoining its infringing and counterfeiting use of Plaintiff's DELTA and WIDGET LOGO marks and misappropriation of Plaintiff's trade secrets compromising the identities of Plaintiff's SkyMiles® frequent flyer and awards members; (2) an order temporarily restricting transfer of Defendant's assets to preserve Plaintiff's rights to an equitable accounting; (3) an order for expedited discovery allowing Plaintiff to inspect and copy Defendant's records relating to the manufacture, distribution, and mailing of the counterfeit Communications and/or Postcards; and (4) an order to show cause for a preliminary injunction against Defendant enjoining its infringing and counterfeiting use of Plaintiff's DELTA and WIDGET LOGO marks and misappropriation of Plaintiff's trade secrets compromising the identities of Plaintiff's SkyMiles® frequent flyer and awards members. Relief is appropriate here, where Defendant's actions have caused, and are continuing to cause, a substantial deleterious effect on Delta's reputation, goodwill and other property rights throughout the United States.

## II.    STATEMENT OF FACTS

### A.  Plaintiff Delta's Trademarks

Delta serves more than 160 million customers each year via its global network using Delta® and Delta Connection ® carriers to more than 340 destinations in nearly 60 countries on six continents. *See* Declaration of E. Alan Arnold, hereinafter "Arnold Declaration," at ¶ 3. Headquartered in Atlanta, Delta employs more than 80,000 employees worldwide and operates a mainline fleet of more than 700 aircraft. Arnold Declaration at ¶¶ 4-5. Delta has extensively marketed its airline and associated services under its DELTA and WIDGET LOGO marks, and Delta has spent hundreds of millions of dollars in worldwide advertising and marketing in order to build the fame, reputation and good will of the DELTA and WIDGET LOGO marks. *Id.* at ¶ 6. Delta advertises through a variety of media, including Internet, television, radio, newspapers, magazines, and direct mail. *Id.* at ¶ 6.

Delta's innovative marketing and high quality services have earned Delta numerous awards and accolades. *Id.* at ¶ 7. Delta was named by Fortune magazine as the most admired airline worldwide in its 2011 World's Most Admired Companies airline industry list, and was named the "Top Tech-Friendly U.S. Airline" by PCWorld magazine for its innovation in technology. *Id.* at ¶ 7.

Plaintiff's services include the SkyMiles frequent flier program; the award-winning BusinessElite service; and more than 50 Delta Sky Clubs in airports worldwide. *Id.* at ¶ 8. Delta is investing more than $2 billion through 2013 in airport facilities and global products, services and technology to enhance the customer experience in the air and on the ground. *Id.* at ¶ 8.

3

Customers can check in for flights, print boarding passes, check bags and review flight status at

www.delta.com. *Id.* at ¶ 8.

Delta owns trademark registrations worldwide for the DELTA and WIDGET LOGO

marks, including in the United States, under which Delta offers and sells its goods and services.

*Id.* at ¶ 9. These registrations include the following U.S. trademark registrations for the DELTA

mark:

| <u>Registration No.</u> | <u>Mark</u> | <u>Registration Date</u> |
|---|---|---|
| 0523611 | DELTA AIR LINES | April 4, 1950 |
| 0654915 | DELTA | November 19, 1957 |
| 0802405 | DELTAMATIC | January 18, 1966 |
| 0963228 | DELTA AIR LINES (IN OVAL LOGO) | July 3, 1973 |
| 0970418 | DELTA AIR LINES | October 9, 1973 |
| 1428763 | DELTA CONNECTION | February 10, 1987 |
| 1703774 | DELTA SHUTTLE | July 28, 1992 |
| 1733703 | DELTA CENTER | November 17, 1992 |
| 1740294 | DELTA CENTER (WITH WIDGET LOGO) | December 15, 1992 |
| 2058985 | DELTA & 1960 AIRCRAFT DESIGN | May 6, 1997 |
| 2408003 | DELTA VACATIONS | November 28, 2000 |
| 2662451 | DELTA AIRELITE | December 17, 2002 |
| 2980826 | DELTA CONNECTION | August 2, 2005 |
| 3890727 | DELTA SKY CLUB | December 14, 2010 |
| 3994004 | DELTA ASSIST | July 12, 2011 |

These registrations, which issued on the Principal Register, are in full force and effect. *Id.* at ¶ 9.

The majority of these registrations have long since acquired "incontestable" registration status.

*Id.* at ¶ 9.

Delta offers and sells its goods and services under and in conjunction with the following

**WIDGET LOGO** trademark registrations in the United States:

| <u>Registration No.</u> | <u>Mark</u> | <u>Registration Date</u> |
|---|---|---|
| 0704103 | WIDGET LOGO | September 6, 1960 |

4

| 1143697 | WIDGET (OPEN) | December 16, 1980 |
| 2556013 | WIDGET LOGO | April 2, 2002 |

These registrations, which issued on the Principal Register, are in full force and effect. *Id.* at ¶ 11. All of these registrations have acquired "incontestable" registration status. *Id.* at ¶ 10.

### B.  Defendant's Illegal Activities

Plaintiff's widespread fame and reputation has resulted in significant counterfeiting of the DELTA and WIDGET LOGO marks and a significant number of fraudulent scams perpetrated on consumers under the DELTA and WIDGET LOGO marks. *See* Declaration of Tanya H. Miari, hereinafter "Miari Declaration" at ¶ 2. Plaintiff regularly investigates and pursues suspicious activity reported by Plaintiff's SkyMiles® members, customers, and other third parties. Miari Declaration at ¶ 2. Plaintiff became aware of the scam perpetrated by Defendant when consumers began complaining in 2011 of their respective receipt of the Postcards via mail featuring the DELTA and WIDGET LOGO marks and when consumers began complaining in 2012 of their respective receipt of the Communications via mail featuring the DELTA and WIDGET LOGO marks and enclosing an alleged Award Notification Voucher for two (2) free round trip airline tickets. *Id.* at ¶ 3. These Communications, the enclosed Award Notification Vouchers, and the Postcards are fake and are unauthorized by and unaffiliated with Plaintiff. *Id.* at ¶ 3.  Defendant's use of Delta's DELTA and WIDGET LOGO marks in its Communications to third parties falsely represent to consumers that Delta is affiliated with, sponsors, or authorized Defendant's actions and business activities. *Id.* at ¶ 3. Plaintiff has not negotiated any such airline ticket giveaway with or through Defendant. *Id.* at ¶ 3. Plaintiff has not authorized Defendant to use in any way its **DELTA** and/or **WIDGET LOGO** trademarks. *Id.* at ¶ 3. Plaintiff is in no way affiliated with Defendant. *Id.* at ¶ 3. Plaintiff has in no way agreed to

promote and/or sponsor such a giveaway through Defendant. *Id.* at ¶ 3. By using Delta's name and marks, Defendant is passing itself off as a representative and/or agent and/or partner of Delta, and Defendant makes it appear that Delta endorses the promotional giveaway. *Id.* at ¶ 3.

Defendant created and is sending via mail a communication purporting to be from the "Awards Department" of Delta and displays the DELTA and WIDGET LOGO marks at the top of the page. *Id.* at ¶ 4. The Communication claims that the recipient has won a voucher for an airline ticket valid for two round trip airline tickets to anywhere in the continental United States from any major international airport. *Id.* at ¶ 5. The Communication goes on to state that "We have been tasked with notifying you of this award. We have attempted contacting you several times. Note that this award must be claimed by no later than 7 days after postmark. If you do not claim your award, it will be transferred to the alternate. This is a limited time offer and can be withdrawn at any time. Flights fill quickly. Governmental taxes and fees may apply. This will be your last chance to respond." *Id.* at ¶ 5. The Communication also lists a "claim number," for example "3914," and states in underlining "Note: This is not a timeshare or land sales offer." *Id.* at ¶ 5. The Communication is signed "Sincerely, Awards Department" with the phone number "1-877-209-4922" and states at the bottom "CALL US AT 1-877-209-4922 TO CLAIM YOUR 2 ROUND TRIP AIRLINE TICKETS WORTH UP TO $999 TODAY." *Id.* at ¶ 5.

The Communication encloses an "Award Notification Voucher". *Id.* at ¶ 6. The Award Notification Voucher features the **DELTA** and **WIDGET LOGO** marks, is stamped "FINAL NOTICE," lists the recipient's name under "Registered Winner Address and Zip Code," features a "Re:" of "Award: 2 Round Trip Airline Tickets" and is purportedly from the "Awards Department Division." *Id.* at ¶ 6.

6

When the listed phone number on the Communication and Award Notification Voucher (1-877-209-4922) is called, the individual answering the phone states that the name of the company is "Perfekt Marketing." *Id.* at ¶ 7. When the claim number "3914" is given, the individual states that an entity by the name of Portfolio Travel is inviting local residents into their new location in San Diego, located at 324 Westfield Horton Plaza, San Diego, CA 92101, and when people visit the new location, they are entered into a drawing to win two (2) free airline tickets. *Id.* at ¶ 7. Upon information and belief, the individual claim numbers are used by the Defendant to determine the location of the recipient, at which point the caller is directed to the nearest entity affiliated with Defendant. The individual also states that Plaintiff Delta is Portfolio Travel's biggest airline, which is why the name and marks DELTA and WIDGET LOGO are listed on the Communication; however, the two (2) free tickets could be on any major airline. *Id.* at ¶ 7. Defendant and/or the named "Portfolio Travel" is in no way affiliated with, sponsored by, or authorized by Delta to use the DELTA and WIDGET LOGO marks. *Id.* at ¶ 8.

Defendant is also sending bogus postcards to third-party recipients offering two (2) roundtrip airfares within the continental U.S. (hereafter the "Postcard(s)"). *Id.* at ¶ 9. The front of the Postcard features an airplane with the DELTA and WIDGET LOGO marks in the bottom left-hand corner and "FLY AWAY ESCAPE" in the bottom right-hand corner. *Id.* at ¶ 9. The back of the Postcard features "DELTA" on the top center of the postcard, followed with a salutation to the recipient, and the language, "Congratulations! You have been selected to receive 2 Round Trip Airfares to anywhere Delta flies in the continental US. CALL WITHIN 48 HOURS. YOU WILL ALSO RECEIVE AS A BONUS 3 DAY 2 NIGHT HOTEL STAY! WE HAVE BEEN TRYING TO CONTACT YOU! (THIS IS NOT A TIMESHARE OR LAND SALE OFFER). To claim this special offer, simply call 1-855-447-8403". *Id.* at ¶ 9.

A least one of these Postcards features the phone number 1-855-447-8403.  *Id.* at ¶ 9 and

Exhibit 3 to Miari Declaration. A call to this number was answered by an individual who advised

the caller had reached a central call center named Perfekt Marketing and Direct Buy.  *See*

Declaration of Chantene S. Stephens, hereinafter Stephens Declaration at ¶ 3-4. The individual

advised that Perfekt Marketing scheduled appointments for a ninety (90) minute PowerPoint

seminar on behalf of travel promotion companies.  *Id.* at ¶ 5.  When the caller provided the

RSVP number for the postcard, the individual provided several offices where the seminar could

be attended, including an office in Tinley Park, IL and one in Bloomington, IL.  *Id.* at ¶ 7, 9.  The

individual then provided a direct number for the caller to reach him once the caller had an

opportunity to speak with her husband about the promotion.  *Id.* at ¶ 10.  The number the

individual provided was 1-800-707-7496, ext. 4640. *Id.* at ¶ 10. An investigation of the phone

number "1-800-707-7496" revealed it was shown to be used by a company identified as "Perfekt

Marketing" with an address of 3015 S. 48th Street, Tempe, Arizona, 85282. Miari Declaration at

¶ 10.

The recipients of the Communications and Award Notification Vouchers and/or the

Postcard are all SkyMiles® members, implying that Defendant has in some manner

misappropriated Delta's SkyMiles® members list, information that Delta maintains as a trade

secret, and is using this misappropriated trade secret to identify individuals to send the

Communications and Award Notification Vouchers and/or Postcards. Miari Declaration at ¶ 11.

Delta has not licensed or authorized Defendant to use its DELTA and/or WIDGET

LOGO marks. *Id.* at ¶ 12.

As previously mentioned, Delta has received numerous complaints from customers

complaining of the Communications, Award Notification Vouchers, and/or Postcards. Arnold

Declaration at ¶ 11. Many of these customers believed the Communications, Award Notification Vouchers, and/or Postcards were indeed affiliated with Delta and, based upon that belief, participated in the fraudulent offers. *Id.* at ¶ 11. These customers then complained to Delta of Defendant and its fraudulent activities after learning that this offer was not sponsored by, affiliated with, or authorized by Delta. *Id.* at ¶ 11.

## III.     Argument

Defendant's purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Delta's reputation and the goodwill symbolized by its DELTA and WIDGET LOGO trademarks and to its SkyMiles® member identities trade secret properties. To freeze Defendant's activities, Delta respectfully requests that this Court issue a temporary restraining order ordering immediate cessation of use of Delta's DELTA and WIDGET LOGO trademarks and improper use of Plaintiff's trade secrets and the freezing of Defendant's assets. Without the relief requested by Delta's instant Motion, Defendant's illegal activity will continue unabated and Delta and consumers will suffer enormous irreparable harm. Such irreparable harm to Delta and consumers is heightened during the popular travel period of the spring and summer months, when a significant portion of Delta's sales occur.

Delta's request for extraordinary relief is well supported. In light of the covert nature of the counterfeiting activities and the vital need to establish an economic disincentive for trademark infringement, counterfeiting, and other property theft, such as trade secret misappropriation, courts now regularly issue such orders.  See, e.g. *Deckers Outdoor Coproration v. Liyanghua et al.,* No. 11 Civ. 7970, Docket Nos. 18, 37 and 42 (N.D. Ill. 2011); *Deckers Outdoor Corporation v. Does 1-55*, No. 11 Civ. 10, Docket Nos. 26, 38 and 69 (N.D.

Ill. 2011); *Tory Burch, LLC., et al. v. Yong Sheng Int'l Trade Co., LTD*, No. 10 Civ. 9336 (S.D.N.Y. May 13, 2011); *Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.*, 10 Civ. 2672 (S.D. Tex. Aug. 2, 2010); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co*., et al., No. 10 Civ. 1630 (S.D.N.Y. Mar. 16, 2010); see also, *Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463, 62 U.S.P.Q. 2d 1789 (E.D. Mich. 2000); *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029 (N.D. Ill. 2001); and *In re Vuitton et Fils, S.A*., 606 F.2d 1 (2nd Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Rule 65 of the Federal Rules of Civil Procedure provides that the Court may issue a temporary restraining order with notice to the adverse party or its attorney where "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65.  A TRO with notice as requested herein is treated as a preliminary injunction. *Levas & Levas v. Village of Antioch, Illinois*, 684 F. 2d 446, 448 (7th Cir. 1982); *Budget Rent A Car Corp. v. Harvey Kidd Automotive*, 249 F. Supp. 2d 1048, 1049 (N.D. Ill. 2003).  Although courts may decide motions for TROs without considering evidence offered by the defendant, courts do consider a defendant's evidence when he or she provides it, which Defendant will be given the opportunity to do so herein if so desired. See e.g., *Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1265 (7th Cir. 1989). See also *Coca-Cola Co. v. Alma-Leo U.S.A., Inc.*, 719 F. Supp. 725, 726 – 727 (N.D. Ill. 1989) ("When the opposing party actually received notice of the application for a restraining order, the procedure that is followed does not differ functionally from that of an application for a preliminary injunction and the proceeding is not subject to any special requirements."), quoting

10

11 Charles Alan Wright and Arthur Raphael Miller, FEDERAL PRACTICE AND

PROCEDURE § 2951, p. 499 (1973).

     This is such a case. The Defendant here is distributing the Communications, the

purported Award Notification Vouchers, and/or the Postcards bearing counterfeits of Delta's

DELTA and WIDGET LOGO marks via the U.S. Postal Service and unlawfully

misappropriating Delta's trade secrets in the form of SkyMiles® member lists. Defendant is

creating a false association in the minds of consumers between the Defendant and Delta by

deceiving consumers into believing that Delta is sponsoring, affiliated with, or otherwise has

authorized the fake and possibly fraudulent Communications, Award Notification Vouchers,

and/or Postcards, and associated award of free roundtrip airline tickets. The entry of a temporary

restraining order is appropriate because it would immediately stop the Defendant from benefiting

from its wrongful use of the DELTA and WIDGET LOGO trademarks and further theft of

Plaintiff's trade secret property and preserve the status quo until such time as a hearing can be

held. Thus, a temporary restraining order is appropriate.

     In the absence of a temporary restraining order with notice as requested herein,

Defendant can and likely will continue the distribution of the fake, unauthorized and fraudulent

Communications, Award Notification Vouchers, and/or Postcards, and/or move any assets from

any U.S.-based bank accounts. Moreover, federal courts have long recognized that civil actions

against counterfeiters – whose very business is built around the deliberate misappropriation of

rights and property belonging to others – present special challenges that justify proceeding on an

*ex parte* basis. See *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp 1075, 1077 (N.D. Ill.

1996) (observing that "proceedings against those who deliberately traffic in infringing

merchandise are often useless if notice is given to the infringers"); *Time Warner Enter. Co. v.*

*Does #1-2*, 876 F. Supp. 407. 410-11 (E.D.N.Y. 1994). This Court should prevent an injustice from occurring by issuing the requested *ex parte* temporary restraining order.

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a), (b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. This Court has jurisdiction over Defendant in that Plaintiff has a substantial long standing business presence in this judicial district and Defendant transacts business in this judicial district and has committed tortious acts from within this district, and further, upon information and belief Defendant has purposefully availed itself of the laws of the State of Illinois and this judicial district by transacting business with at least one company located in Illinois, and committing tortious acts involving persons located in Illinois with respect to conduct complained of in Plaintiff's Complaint as reiterated herein. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Furthermore, this Court may properly exercise personal jurisdiction over Defendant since Defendant directly targets business activities toward consumers in Illinois and causes harm to Delta's business within this Judicial District. The Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Delta substantial injury in the State of Illinois.

## A.  Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. See, e.g. *Levas and Levas v. Village of Antioch, Ill*. supra, and *Charter Nat'l Bank and Trust v. Charter*

*One Fin., Inc.*, 2001 WL 527404, \*1 (N.D. Ill. May 15, 2001) (citing *Frederick Atkins, Inc. v. Carson Pirie Scott & Co. Inc.,* 1999 WL 1249342, \*1 (N.D. Ill. Dec. 13, 1999)).  A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted.  See *TY, Inc. v. The Jones Group, Inc.* 237 F. 3d 891 at 895 (7th Cir. 2001).

Under the Illinois Trade Secrets Act, actual or threatened misappropriations of trade secrets may also be enjoined. 765 ILCS 1065/3. *See Strata Marketing, Inc. v. Murphy*, 317 Ill. App. 3d 1054, 740 N.E.2d 1166, 1177, 251 Ill. Dec. 595 (1st Dist. 2000), citing *PepsiCo, Inc. v. Redmond*, 54 F. 3d 1262 (7th Cir. 1995). If a plaintiff can establish that (1) its information is sufficiently secret to give it a competitive advantage, and (2) it took affirmative measures to prevent others from acquiring or using the information, it can establish the existence of a clearly ascertainable right or protectable interest under the Act. *Liebert Corp. v. Mazur*, 357 Ill. App. 3d 265, 827 N.E. 2d 909, 921, 293 Ill. Dec. 28 (1st Dist. 2005).

If the Court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*.  Finally, the Court must consider the public interest (non-parties) in denying or granting the injunction. *Id*.  The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id*. quoting *Abbot Labs. v. Mead Johnson & Co.*, 971 F. 2d 6, 11 (7th Cir. 1992).  This process involves engaging in what the Court has deemed "the sliding scale approach," the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *Id*.  The

13

sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id*. at 896.

### B.  Delta will Likely Succeed on the Merits

### i.  Delta Will Likely Succeed on its Trademark Infringement and Counterfeiting Claim.

The greater the movant's likelihood of succeeding on the merits, the less the balance of harms need to be in its favor. See *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F. 3d 456, 461 (7th Cir. 2000). A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods…which such use is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, Delta must show (1) its mark is distinctive enough to be worthy of protection, (2) Defendant was not authorized to use Delta's trademarks and (3) Defendant's use of Delta's trademarks causes a likelihood of confusion as to the origin or sponsorship of Defendant's products.  See *Neopost Indus. B.V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC*, 268 F. 3d 494, 496-97 (7th Cir. 2001)).  Delta satisfies the three requirements of the Lanham Act to successfully bring a trademark infringement case.

Delta unarguably meets the first two elements for its trademark infringement claim. Delta has numerous U.S. federal trademark registrations for the DELTA and WIDGET LOGO marks.  The DELTA mark was used as early as 1934 and the WIDGET LOGO as early as 1959 in the United States.  Furthermore, Delta has never licensed or given Defendant the right to use its DELTA and WIDGET LOGO trademarks.

Delta satisfies the third factor as well.  The Seventh Circuit has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of Defendant to palm off its product as of that of another.  *Eli Lilly & Co. v. Natural Answers, Inc.* 233 F.3d 456, 461 (7th Cir. 2000) citing *Smith Fiberglass Prods., Inc. v. Ameron, Inc.*, 7 F. 3d 1327, 1329 (7th Cir. 1993).  These factors are not a mechanical checklist, and "[t]he proper weight given to each … will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc*., 94 F.3d 376, 381 (7th Cir. 1996).  At the same time, although no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations.  *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.,* 873 F.2d 985, 999 (7th Cir. 1989).

Here, Delta plainly satisfies the likelihood of confusion test. Defendant is distributing to third parties upon information and belief throughout the United States Communications, Award Notification Vouchers, and Postcards bearing the DELTA and WIDGET LOGO marks.  These counterfeit Communications, Award Notification Vouchers, and Postcards claim that the recipient has won two (2) free roundtrip airline tickets to anywhere in the continental United States.  As such, the first and second factors weigh heavily in favor of Delta.

Delta also satisfies the third factor, area and manner of concurrent use.  When considering the third factor, a court looks at "whether there is a relationship between the use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 681 (7th Cir. 2001).  A court also looks to whether the parties used the same channels of commerce, targeted the same general audience and/or used similar

marketing procedures.  *Id.*  Here, both Delta and Defendant advertise and market through the

U.S. Postal Service.  Both parties use the same means and the same channels of commerce to

target the same consumers searching for Delta's services.  Thus, because Defendant targets the

same consumers by the same means Delta does, this factor weighs heavily in favor of Delta.

Regarding the fourth factor, degree of consumer care, consumers purchasing Delta's

airline services are not a certain specialized, sophisticated group of people.  Rather, the consumer

base here is a diverse group of people.  "[W]hen a buyer class is mixed, the standard of care to be

exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated

consumer in the class."  *Trans Union LLC*, 142 F. Supp. 2d at 1043 citing *Ford Motor Co. v.

Summit Motor Prods, Inc.*, 930 F.2d 277, 293 (3rd Cir. 1991), cert. denied, 502 U.S. 939, 112

S.Ct. 373, 116 L.Ed.2d 324 (1991).

Delta's DELTA and WIDGET LOGO marks have been used for more than 70 years and

50 years, respectively, and have become famous and associated with Delta's high quality airline

and related services. They signify to consumers that the services and products come from Delta

and are provided pursuant to the highest quality standard. Consumers have come to recognize the

DELTA and WIDGET LOGO marks as a source of premium airline and related services.  Thus,

the fifth factor, the strength of the mark, also weighs heavily in favor of Delta.

As for the sixth factor, Delta does not need to prove likelihood of confusion with

evidence of actual confusion, all it needs is *some* evidence showing confusion.  See *Libman Co.

v. Vining Indus., Inc.* 69 F.3d 1360, 1363 (7th Cir. 1995).  In this case, Delta has received

numerous complaints from customers complaining of the Communications, Award Notification

Vouchers, and/or Postcards. Many of these customers believed the Communications, Award

Notification Vouchers, and/or Postcards were indeed affiliated with Delta and, based upon that

belief, participated in the fraudulent offers. These customers then complained to Delta of Defendant and its fraudulent activities after learning that this offer was not sponsored by, affiliated with, or authorized by Delta. Moreover, actual confusion can be inferred because Defendant is distributing counterfeit Communications, Award Notification Vouchers, and Postcards bearing Delta's DELTA and WIDGET LOGO marks claiming the recipient has won two (2) free roundtrip airline tickets. Because Defendant is using Delta's DELTA and WIDGET LOGO marks, consumers will be confused and believe the Communication, Award Notification Voucher, and/or Postcard is genuine and/or that it is sponsored or endorsed by Delta. This factor weighs in favor of Delta.

Here, Defendants are intentionally using Delta's DELTA and WIDGET LOGO marks to confuse and deceive the consuming public into thinking that Defendant's counterfeit products are authorized, sponsored by, approved of, or affiliated with Delta.  Defendant is purposely attempting to benefit and trade off of Delta's goodwill and reputation.  Therefore, the final factor, intent of defendant, also weighs heavily in Delta's favor.

It is manifestly clear that each of the seven factors weighs heavily in favor of Delta, and therefore Delta has proved it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

Delta is also likely to prevail on its trade secret misappropriation claim that its revered and valued SkyMiles® member lists long protected are being summarily compromised by Defendant's theft and conduct.

### ii.  Delta is Likely to Succeed on its False Designation of Origin Claim.

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show: (1) defendant used a false designation of origin, (2) defendant's use of the products was in

interstate commerce, and (3) the likelihood that consumers will be confused by defendant's false designation of origin. *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990).  The test to be used in determining whether a violation has occurred is whether "the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public." *Id*. at 1205.  This is the same test that is used for bringing a trademark infringement claim under the Lanham Act.  See *Neopost Indus. B.V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005).  Because the DELTA and WIDGET LOGO marks are federally registered marks and Delta has established the merits of likelihood confusion in its trademark infringement and counterfeiting claim against Defendants, a likelihood of success on the merits for Delta's false designation of origin claim is also established.

### iii.  Delta is Likely to Succeed on its Illinois Uniform Deceptive Trade Practice Act Claim.

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth in the Lanham Act." *Spex, Inc. v. The Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994).  Illinois courts look to federal case law and apply the same analysis to state infringement claims.  *Spex*, 847 F. Supp. at 579 (citing *Thompson v. Spring-Green Lawn Care Corp.*, 126 Ill. App. 3d 99, 104-105 (Ill. App. Ct. 1984)).  The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practice Act statute.  *Am. Broad. Co. v. Maljack Prod., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998).  Because Delta has established the merits of likelihood of confusion in its trademark infringement and counterfeiting claim against Defendant and the standard is the same under Illinois law, Delta has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

### C.  There is No Adequate Remedy at Law and Delta is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001).  See also *Eli Lilly*, 233 F.3d at 468 (7th Cir. 2000) (citing *Abbot Labs.*, 971 F.2d at 16) (acknowledging that "irreparable harm is generally presumed in cases of trademark infringement and dilution"); *Dunkin Donuts Franchised Rest. LLC v. Elkhatib*, 2009 WL 2192753, *4 (N.D. Ill. July 17, 2009) (recognizing that irreparable harm and inadequate remedy at law are presumed in trademark and trade dress infringement cases).

This presumption arises, "in part, from the realization 'that the most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods.'" *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Circ. 1979) (quoting *4 Callman, Unfair Competition, Trademarks and Monopolies* s 88.3(b) at 205 (3d ed. 1970)). As such, monetary damages are likely to be inadequate compensation for such harm.  *Ideal Indus.*, 612 F.2d at 1026.

"Irreparable harm is harm "which cannot be repaired, retrieved, put down again, atoned for…[T]he injury must be of a particular nature, so that compensation in money cannot atone for it.'" *Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) (quoting *Gause v. Perkins*, 56 N.C. (3 Jones Eq.) 177 (1857)). The irreparable harm that Delta is suffering, and will continue to suffer, is not only a matter of legal presumption but of plain and simple fact. Defendant's continued use of Delta's DELTA and WIDGET LOGO marks threatens to irreparably harm Delta's name and marks and the goodwill associated with it.  No amount of

money could adequately compensate Delta for this threat to the reputation and goodwill of its high-quality products. Similarly, no amount of money could substitute for the theft of its valued SkyMiles® trade secret data. Such harms are irreparable. As such, the injunctive relief sought by Delta should be granted.

### D.  The Balancing of Harms Weighs in Delta's Favor

As noted above, if the Court is satisfied that Delta has demonstrated (1) a likelihood of success of merits; (2) no adequate remedy at law; and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the irreparable harm that Defendant will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Delta will suffer if relief is denied. *TY, Inc.* 237 F.3d at 895.  As a willful infringer, Defendant is entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l , Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994).  Plainly, that is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages derived thereby." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted).  The balance of harms, as such, "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomm. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

As Delta has demonstrated, Defendant has been profiting from the distribution of counterfeit DELTA and WIDGET LOGO trademarks and compromising Delta's valued trade secret property, thus proving the balance of equities weighs decisively in its favor.  As such, equity requires that Defendant be ordered to cease its unlawful conduct.

20

### E.  This Injunction is in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendant from violating federal trademark law and compromising the identity of SkyMiles® members.  The public is currently under the false impression that Defendant is giving away airline tickets with Delta's approval and endorsement.  An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion."  *Eli Lilly*, 233 F.3d at 469.

Federal courts have long-held that "the trade-mark laws … are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit."  *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) (citing *Stork Restaurant, Inc. v. Sahati*, 166 F.2d 348, 354 (9th Cir. 1948); *Rosenberg Bros. & Co. v. Elliott*, 7 F.2d 962, 965-66 (3rd Cir. 1925); *Gen. Baking Co. v. Gorman*, 3 F.2d 891, 893 (1st Cir. 1925); *Goldwyn Pictures Corp. v. Goldwyn*, 296 F. 391, 401 (2nd Cir. 1924)).

The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation."  *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); see also *Shashi, Inc. v. Ramada Worldwide, Inc.* 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is patent, and the injunctive relief which Delta seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendant's actions.  The public has the right not to be confused or defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademarks and service marks used in connection with those goods and services, and as to the identity of

SkyMiles® members.  Unless Defendant's continuing misuse of Delta's DELTA and WIDGET

LOGO trademarks is enjoined, the public will continue to be confused and misled by

Defendant's conduct.

As such Delta's Application for entry of Temporary Restraining Order is in the public

interest.


IV.      **THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE**

The Lanham Act authorizes courts to issue injunctive relief "according to principles of

equity and upon such terms as the court may deem reasonable, to prevent the violation of any

right of the registrant of a mark …" 15 U.S.C. § 1116(a).

> **A.  A Temporary Restraining Order Immediately Enjoining Defendant's Unauthorized and Illegal Use of Delta's Marks And Continued Misappropriation of its SkyMiles® Trade Secrets is Appropriate**

Delta requests an order requiring the Defendant to immediately cease all use of Delta's

DELTA and WIDGET LOGO marks or substantially similar marks and continued theft of its

trade secrets. Attached as Exhibit 1 please find the proposed order. Such relief is necessary to

stop the ongoing harm to Delta's DELTA and WIDGET LOGO marks and goodwill and to

prevent the Defendant from continuing to benefit from the increased traffic to its operations

created by its illegal use of Delta's DELTA and WIDGET LOGO marks.  The need for *ex parte*

relief is magnified in today's economy where counterfeiters can operate in an anonymous

fashion.  Many courts have authorized immediate injunctive relief in cases involving the

unauthorized use of trademarks.  See, e.g. *Deckers Outdoor Corporation v. Liyanghua et al*., No.

11 Civ. 7970, Doc. No. 18 (N.D. Ill. Nov. 15, 2011) (Order granting *Ex Parte* Application for

Temporary Restraining Order); *Deckers Outdoor Corporation v. Does 1-55*, No. 11 Civ. 10,

Doc. No. 26 (N.D. Ill. February 3, 2011) (same); *Tory Burch, LLC., et al. v. Yong Sheng Int'l Trade Co., LTD*, No. 10 Civ. 9336 (S.D.N.Y. January 4, 2011) (same); *Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.*, No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010) (same); the *North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010) (same); *Ford Motor Co. v. Lapertosa*, 126 F. Supp. 2d 463 (E.D. Mich. 2001) (enjoining Defendant from "using in any way the Internet domain name 'fordrecalls.com'"); *Kraft Food Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002) (granting preliminary injunction requiring defendant "immediately" to remove all references to version of plaintiff's mark, including removing all references "from metatags, metanames, or any other keywords on his websites").

### B.  An Order Preventing the Fraudulent Transfer of Assets is Appropriate

Delta requests an *ex parte* order restraining and freezing Defendant's assets so that Delta's right to an equitable accounting of Defendant's profits from its unauthorized and counterfeit use of Delta's DELTA and WIDGET LOGO marks to promote its own services is not impaired.  Issuing an *ex parte* order will ensure Defendant's compliance.  If such an order is not issued in this case, Defendant will disregard its responsibilities and fraudulently transfer financial assets to overseas accounts or to another country before an order is issued.

In addition, the amount of damages to which Delta is entitled as set forth in the Complaint is believed to far exceed any amount likely contained in any of the Defendant's U.S. financial accounts on the day the accounts are frozen.  As in collecting such a judgment, Delta would be entitled to any monies of the Defendant – not just those attributable to sales of Delta's products.

Delta has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117, Delta is entitled to an accounting and recovery of profits, damages, and costs from Defendant's infringing and counterfeit actions and misappropriation. Furthermore, several circuits, including this Circuit, have found the Lanham Act grants the District Court authority to issue a restraining order freezing Defendant's assets in cases where a plaintiff seeks an equitable remedy.

In the seminal *Reebok v. Marnatech* case, the 9th Circuit affirmed the district court's ruling limiting the transfer of assets and explicitly state that "because the Lanham Act authorizes the district court to grant [plaintiff] an accounting of [defendant's] profits as a form of final equitable relief, the district court had the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief." *Reebok Int'l Ltd. v. Marnatech Enters.*, 970 F.2d 552, 559 (9th Cir. 1992).

Since *Reebok*, many Federal Courts, including the Northern District of Illinois, have granted orders preventing the fraudulent transfer of assets. See, e.g. *Deckers Outdoor Corporation v. Liyanghua et al.*, No. 11 Civ. 7970 (N.D. Ill. February 3, 2011); *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005); *Tory Burch, LLC., et al. v. Yong Sheng Int'l Trade Co., LTD*, No. 10 Civ. 9336 (S.D.N.Y. January 4, 2011); *Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.*, No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010); *Levi Strauss & Co., v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). The Northern District in *Lorillard* followed the *Reebok* decision when it held that a court has "the authority to enter an order freezing assets in cases where the plaintiff seeks an equitable remedy generally, and

specifically in Lanham Act cases." *Lorillard*, 2005 WL 3115892 at *13.  Furthermore, Federal Rules of Civil Procedure 64 and 65 provide authority for preliminary injunctions and the freezing of assets, and the Lanham Act provides for Plaintiff an accounting and recovery of profits, costs, and damages. Fed.R.Civ.P. 64-65; 15 U.S.C. § 1117.  Since Delta seeks recovery of Defendant's profits, an order freezing the Defendant's assets is within the Court's authority and should be granted. *Lorillard*, 2005 WL 3115892 at *13.

Delta has shown a likelihood of success on the merits, the immediate and irreparable harm suffered as a result of Defendant's activities, and that unless Defendant's assets are frozen, Defendant will likely hide or move its ill-gotten funds to offshore bank accounts.  See *Reebok*, 737 F. Supp. at 1527.  Accordingly, the granting of an injunction preventing the transfer of Defendant's assets is proper.

## C.  Delta is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits."  *Vance v. Rumsfeld* 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, (1978)).  A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.*  (citing *Doty v. Illinois Cent. R.R. Co.*, 162 F.3d 460, 461 (7th Cir. 1998)).  Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants.  See Fed. R. Civ. P. 26(b)(2) and *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As demonstrated above, Delta is being irreparably harmed by Defendant's infringing and counterfeit use of Delta's DELTA and WIDGET LOGO trademarks. Defendant is hiding behind

the Communications, Award Notification Vouchers, and Postcards it is sending to third parties across the United States sans identifying information on said communications of who Defendant is. Instead, Defendant leads recipients to believe that Plaintiff Delta is the originator of these Communications, Award Notification Vouchers, and Postcards by plastering said items with Delta's name and trademarks. Defendants then further concoct other third parties, such as "Portfolio Travel," and use various 1-800 or 1-888 numbers to further increase their anonymity. Without being able to discover Defendant's bank and payment system accounts, any asset restraint would be of limited value because Delta would not know the entities upon whom to serve the order.

Delta respectfully requests an *ex parte* Order allowing expedited discovery to discover Defendant's various infringing and counterfeiting methods, including bank and payment system accounts Defendant uses for their infringing and counterfeit sales operations. The discovery requested on an expedited basis in Delta's Proposed Temporary Restraining Order has been precisely defined and carefully limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts, the Communications, Award Notification Vouchers, and Postcards and other materials being sent to third parties across the United States bearing infringing and counterfeit copies of Delta's DELTA and WIDGET LOGO marks, and the ways and means by which Defendant creates these Communications, Award Notification Vouchers, and Postcards and other materials in addition to Defendant's identities and information related to Defendant's other operations will permit Delta to gain a full and accurate picture of Defendant's infringing and counterfeiting activities and ensure that these activities will be contained.

26

Delta is unaware of any reason that Defendant or third parties cannot comply with these expedited discovery requests without undue burden. More importantly, Defendant has engaged deceptive practices in hiding its identities and misappropriating Delta's identity that Delta's asset restraint may have little meaningful effect without the requested relief. Accordingly, Delta respectfully requests that the expedited discovery be granted.

## V.      A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary or permanent injunction is vested in the Court's sound discretion. *Mascio v. Public Emp. Retirement Sys. of Ohio*, 160 F. 3d 310, 313 (6th Cir. 1998); *Rathman Group v. Tanenbaum*, 889 F. 2d 787, 789 (8th Cir. 1987); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F. 3d 411 (4th Cir. 1999).

Because of the strong and unequivocal nature of Delta's evidence of counterfeiting and infringement and unfair competition, Delta respectfully requests this Court to not require Delta to post a bond, and in any event, of no more than One Thousand dollars ($1,000.00) and certainly no more than Ten Thousand ($10,000.00).  See, e.g., *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.* 482 F. Supp. 2d 1065, 1078 (E.D.Wisc.2007) ($1,000 bond); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 456 (7th Cir. 2010) ($10,000 bond); *True Religion Apparel, Inc., et al. v. Xiaokang Lee et al.*, No. 11 Civ. 8242 (S.D.N.Y. Dec. 12, 2011) ($10,000 bond); *Nat'l Football League v. Chen Cheng*, No. 11 Civ. 0344 (S.D.N.Y. Jan. 31, 2011) ($10,000 bond); *Farouk Systems, Inc. v. Eyou Int'l Trading Company, Ltd., et al.*, No. 10 Civ. 2672 (S.D. Tex. Aug. 16, 2010) ($10,000 bond); *Chanel, Inc. v. Zhixian*, No. 10-cv-60585-JIC (S.D. Fla. April 21, 2010) ($10,000 bond); *Chanel, Inc. v. Paley*, No. 09-cv-04979-MHP (N.D. Cal. Nov. 13,

2009) ($10,000 bond); *Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (S.D.N.Y. Oct. 15, 2009) ($10,000 bond).


**VI.     CONCLUSION**

Defendant's trademark infringement, counterfeiting, and misappropriation operations are irreparably harming Delta's business, its DELTA and WIDGET LOGO marks, and consumers. Without entry of the requested relief, Defendant's sale of the counterfeit products will continue to lead prospective purchasers and others to believe Defendant's counterfeit Communications, Award Notification Vouchers, Postcards, and/or promotional schemes are authorized by, affiliated with, or sponsored by Delta, when in fact, they have not.  Therefore, entry of an *ex parte* order is necessary to protect Delta's trademark rights, the good will associated with the DELTA and WIDGET LOGO marks, and to prevent further harm to Delta and the consuming public, and to preserve the status quo.  In view of the foregoing, Delta respectfully requests this Court enter a temporary restraining order in the form submitted herewith and set a hearing regarding Delta's preliminary injunction before the expiration of the temporary restraining order.


Dated on this 29th day of March, 2012.                    Respectfully submitted,

                                                                              _/John P. Luther/_____
                                                                              John P. Luther
                                                                              One of Plaintiff's Attorneys

Burton S. Ehrlich
ISBA No. 0721018
Ladas & Parry LLP
224 South Michigan Avenue
Suite 1600
Chicago, Illinois 60604
(312) 427-1300

John P. Luther
WSBA No. 34115
Ladas & Parry LLP
224 South Michigan Avenue
Suite 1600
Chicago, Illinois 60604
(312) 427-1300

Tanya H. Miari
ISBA No. 6290224
Ladas & Parry LLP
224 South Michigan Avenue
Suite 1600
Chicago, Illinois 60604
(312) 427-1300